UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| APPLICATION OF TINSEL GROUP, S.A. | § | |
| FOR AN ORDER DIRECTING DISCOVERY | § | MISC. ACTION H-13-2836 |
| IN AID OF FOREIGN PROCEEDING | § | |
| PURSUANT TO 28 U.S.C. § 1782 | § | |
| | § | |

**MEMORANDUM OPINION AND ORDER**

Pending before the court is the motion for protective order and motion to modify subpoenas by Sentinel Trust Company, Planck Investments, and Mario Loya, Individually and as Trustee of the Nova Trust (collectively "respondents"). Dkt. 5. After reviewing the motion, response, reply, and applicable law, respondents' motion is DENIED.

**I.  BACKGROUND**

Litigation in the Netherlands (the "Dutch Litigation") has been ongoing since October 2011 between Planck Investments ("Planck") and Tinsel Group ("Tinsel") (along with other defendants not involved herein) regarding whether Planck's interest in Tinsel entitles it to a share of profits from Vitol Holding for a limited period of time or indefinitely. The Dutch Litigation also concerns whether Tinsel and Vitol acted improperly in extinguishing Planck Investment's entitlement to certain Vitol Holding shares.

On December 5, 2013, Tinsel filed an Application for Discovery in Aid of Foreign Proceeding under 28 U.S.C. § 1782. Tinsel sought issuance of subpoenas for documents and testimony from the Nova Trust, Mario Loya, individually and as trustee of the Nova Trust, Sentinel Trust Co., and Planck for use in the Dutch Litigation. Finding that Tinsel was an interested party seeking testimony and documents from individuals or entities in this District for use in a proceeding

of an international tribunal, the court authorized the issuance of the subpoenas to respondents on December 18, 2013.

The subpoenas to the respective respondents are largely the same and seek communications between separate respondents or their attorneys regarding Planck's interest in Tinsel. Tinsel maintains that the requests only seek information disclosed to third parties, namely information exchanged between or among respondents or exchanged between or among respondents' attorneys. Tinsel does not seek information exchanged between a respondent and that respondent's counsel. Tinsel also requests invoices supporting the attorneys' fees claim that Planck has made in the Dutch Litigation.

Respondents now move for an order of protection on the grounds that the subpoenas seek information which is privileged under Dutch and American law. Respondents generally aver that all information sought by Tinsel is privileged under Dutch law. Otherwise, respondents request protection on the bases of the attorney-client privilege, work product doctrine, and common interest protection under federal common law. In the alternative, respondents request that the court narrow the scope of the subpoenas. *Id.*

## II. ANALYSIS

A district court may, within its discretion, grant an application made under 28 U.S.C. § 1782 when (1) the person from whom discovery is sought is found or resides within the district; (2) the discovery is for use in a foreign tribunal; and (3) the application is made by an interested person. However, a person "may not be compelled to give his testimony or statement or to produce a document or other thing in violation of any legally applicable privilege." 28 U.S.C. § 1782.

Respondents do not contest that the statutory prerequisites have been met in this application, but rather, object to the alleged privileged nature of the documents and information requested. Respondents generally assert that all of the information sought in the subpoenas violates Dutch privilege law; and furthermore, that the subpoenas improperly seek information protected by the attorney-client and work product privileges. Tinsel maintains that respondents have waived privilege by disclosing documents to other parties or third parties or their attorneys. Respondents dispute that any waiver occurred, relying on a Common Interest Agreement executed between (1) Mario Loya, as trustee of the Nova Trust, (2) Villiers Holdings, as General Partner of Planck Investments, LP, (3) Planck Investments, LP, (4) Leticia Loya, as next friend for Daniel Loya and Paul Loya, minors, (5) Michael Loya, and (6) Sentinel Trust Company, LBA, Trust Protector of the Nova Trust. The agreement took effect on March 31, 2011. Respondents maintain that these parties share a common legal interest, namely investigating Tinsel's conversion of Vitol Holding shares held by Planck for the benefit of the Nova Trust. Respondents contend that the exchange of information among these parties is protected by the common interest privilege, and therefore, does not constitute waiver.

### A.    What Law Governs

Respondents urge this court to view the privilege issues through the lens of Dutch law. When considering a federal claim or federal statute, federal courts apply federal common law to determine the existence and scope of a privilege. *Coughlin v. Lee*, 946 F.2d 1152, 1159 (5th Cir. 1991). The Fifth Circuit has recognized that the legislative history of 28 U.S.C. § 1782 suggests that parties may rely on foreign privileges to shield information from discovery in the United States. However, "to avoid speculative forays into legal territories unfamiliar to federal judges, parties must provide authoritative proof that a foreign tribunal would reject evidence because of a violation of an alleged

3

foreign privilege." *Ecuadorian Plaintiffs v. Chevron Corp.*, 619 F.3d 373, 378 (5th Cir. 2010) (internal quotations omitted).

Respondents have not provided authoratative proof regarding Dutch law on their particular claims of privilege. Respondents have provided an affidavit by Planck's Dutch counsel who expounds general principles of Dutch privilege law. As in *Ecuadorian Plaintiffs*, the court cannot accept the conclusory assertions of Dutch counsel that all the information sought by Tinsel would be privileged under Dutch law. Respondents have not pointed to any "judicial, executive, or legislative declaration that clearly demonstrates that allowing discovery in this case would offend [Dutch] judicial norms." *Id.* (internal quotations omitted). Indeed, respondents have not clearly and definitively established that disclosure of documents shared among themselves or their attorneys would violate Dutch privilege law or that the Common Interest Agreement has any effect in the Dutch legal system. Therefore, the court will apply federal common law to objections lodged by respondents.

### B. Attorney-Client Privilege and Work Product Doctrine

The party seeking to assert a privilege from discovery bears the burden to demonstrate its applicability. *In re Santa Fe Int'l Corp.*, 272 F.3d 705, 710 (5th Cir. 2001). Federal Rule of Civil Procedure 26(b)(5) provides that a party claiming a privilege "shall make the claim expressly and shall describe the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection."

Here, respondents have only made blanket assertions of privilege, broadly characterizing the entirety of Tinsel's requests as privileged under either the attorney-client or work product privileges.

4

Respondents' blanket assertions are insufficient and do not reach any minimum level of specificity in order for the court to evaluate the privileged status of documents for which respondents seek protection. *See In re United States*, 397 F.3d 274, 285 (5th Cir. 2005) (ordinarily, a party must claim privilege with specificity); *United States v. Davis*, 636 F.2d 1028, 1044 n.20 (5th Cir. 1981) (noting blanket assertions of privilege are unacceptable). Thus, respondents have failed to carry their burden of showing that certain communications satisfy the requirements of the attorney-client or work product privilege.

### C.  Common Interest Privilege

Respondents' primary contention concerning privilege is that the parties to the Common Interest Agreement did not waive privilege because they shared a common legal interest. Under Fifth Circuit jurisprudence, two types of communications are protected under the common interest doctrine: (1) communications between co-defendants in actual litigation and their counsel; and (2) communications between potential co-defendants and their counsel. *Santa Fe*, 272 F.3d at 710. Respondents do not, and cannot, assert that their communications are protected under the former category because of all of the respondents, only Planck is a party in the Dutch Litigation. Rather, respondents claim that they all share a common legal interest in the Dutch Litigation, despite being non-parties in that case. While the term "potential" has not been clearly defined, the Fifth Circuit has instructed district courts to narrowly construe the common interest privilege in order to strike the proper balance between an "obstacle to truthseeking" and "effectuat[ing] necessary consultation between legal advisors and clients." *Id.* at 711 (citing *In re LTV Sec. Litig.*, 89 F.R.D. 595, 606 (N. D. Tex. 1981).

In *Santa Fe*, for example, the Fifth Circuit considered whether an internal memorandum providing legal advice circulated between companies that later became co-defendants years later deserved protection under the common interest privilege. *Id*. at 708. The court found that for the common interest doctrine to apply for potential co-defendants there must be a "palpable threat of litigation at the time of the communication, rather than a mere awareness that one's questionable conduct might some day result in litigation, before communications between one possible future co-defendant and another . . . could qualify for protection." *Id.* at 711. Like in *Santa Fe*, the documents sought by Tinsel mostly involve a period of years before the prospect of the litigation. Specifically, Tinsel seeks documents exchanged between or among respondents or their attorneys from 2005 to the present. The Dutch Litigation did not commence until October 2011, and the Common Interest Agreement did not take effect until March 31, 2011. Temporal length between the majority of documents sought by Tinsel and the prospect of litigation is too great for the court to consider all the documents pre-dating the Common Interest Agreement to be covered by the common interest privilege. *Id.* at 713 (citing to the district court's commentary: "[w[hen the threat of litigation is merely a thought rather than a palpable reality, the joint discussion is more properly characterized as a common business undertaking, which is unprivileged"). Further, the fact that all of the respondents (besides Planck) are not even co-defendants in the Dutch Litigation make the respondents' reliance on the common interest privilege even more tenuous. Because the Tinsel subpoenas seek documents that were disclosed to other entities or their counsel, such documents are not privileged on the basis of the common interest privilege until litigation became a palpable reality. *See Hodges, Grant & Kaufmann v. United States Gov't*, 768 F.2d 719, 721 (5th Cir. 1985) ("Because the privilege protects only confidential communication, the presence of a third person while such

6

communications are made or the disclosure of an otherwise privileged communication to a third person eliminates the intent for confidentiality on which the privilege rests."). Respondents concede that they did not anticipate the Dutch Litigation until January 2011. Therefore, documents exchanged between or among the respondents prior to that date are not privileged. Tinsel does not seek, and this order does not compel, production of communications between a respondent and that respondent's attorney.

### III. CONCLUSION

Therefore, because respondents have failed to meet their burden with respect to the applicability of the attorney-client and work product privileges, the court denies respondents' motion for protective order and motion to modify the subpoenas. Dkt. 5. Further, the common interest privilege does not protect those documents disclosed to third parties before litigation became a realistic possibility. With the guidance contained in this opinion, respondents are ordered to comply with the subpoena requests. However, to the extent respondents continue to assert the privileged status of documents in light of this court's ruling, respondents shall submit to Tinsel a privilege log in accordance with Federal Rule of Civil Procedure 45 in order to specifically document their claim of privilege. The parties shall confer regarding the privileged nature of documents before seeking court intervention on any further disputes.

The additional relief sought in respondents' reply (Dkt. 14) is denied.

Signed at Houston, Texas on January 22, 2014.

_____
Gray H. Miller
United States District Judge